McKiNNEY, J.,
delivered the opinion of the Court.
The complainant by his bill seeks to restrain the defendant from proceeding to sell, at execution sale, a tract of land, of which the former claims to be rightfully seised. The facts of the case are as follows:
The land had been sold under a deed of trust executed by James E. Bowman, in satisfaction of a debt due from him to William Kincaid. At the sale, Kincaid became the purchaser, and received a conveyance for the same, from the trustee. Afterwards, and within two years from the trust sale — perhaps in July or August, 1851 — an arrangement was entered into between the complainant Huffaker (who claimed to be a judgment creditor of Bowman for some small amount) and Kincaid and James E. Bowman; in pursuance of which, Huffaker advanced to Kincaid upwards of $1400, being the amount of his debt for which the land was sold, and likewise paid to James *95 E. Bowman the further sum of $150, and thereupon Kincaid reconyeyed said land back to Bowman, and Bowman, at the same time, executed a deed to Huffaker, vesting the latter with the absolute title in fee to said land. This was one entire transaction, in consummation of a previous agreement between the parties.
Prior to this transaction, in December, 1848, one Cornelius Bowman obtained a decree, in the Chancery Court of Claiborne, against the said James E. Bowman, for the sum of $348 52. And in less than twelve months from the date of the conveyance from Kincaid to James E. Bowman, above mentioned, he caused an execution to be issued upon said decree, and to be levied upon said land, as the property of James E. Bowman, his debtor. Anri to enjoin the levy and sale under this execution is the object of the present bill.
The complainant insists that the transaction was a redemption by him of the land from Kincaid, and an extinguishment of Bowman’s equity of redemption under the statute.
Eor the defendant it is assumed that the transaction, in fact and in legal effect, was a repurchase of the land by James E. Bowman from Kincaid; and that, by the conveyance of the latter to said Bowman, he became vested with the legal title to the land, and had such a seisin thereof, as that the lien of the defendant’s decree attached upon said land instantly upon the execution of the deed from Kincaid to him, notwithstanding the conveyance to the complainant.
It is true that, by the act of 1833, ch. 92, § 6, a decree in Chancery for the payment of money forms a lien upon the lands of the defendant, in like manner as a *96 judgment at law. And we hare recently beld that such lien will attach upon lands subsequently acquired by the debtor, and continue to be operative for the period of twelve months from the time he may have acquired the same. If, therefore, the position were correct, that, by force of the conveyance from Kincaid to James E. Bowman, he became instantly seised of the land, the conclusion insisted upon by the defendant’s counsel would inevitably follow; inasmuch as the decree was rendered in the county where James E. Bowman resided at the time, and where the land is situated.
But the position assumed for the defendant is not maintainable upon the facts of this case. It is true, the proof shows that, in form merely, the redemption of the land took place in the name of Bowman; but it is admitted that the redemption-money was Huffaker’s, and that he paid it over to Kincaid in redemption of the land. It is clear that the redemption was intended to be, and in legal effect was, a redemption by Huffaker; that no title or beneficial interest was intended to be vested in Bowman ; and that the use of his name in the redemption of the land, and the conveyance to him, were only resorted to as the most effectual method known to the parties of accomplishing the end in view, which was, to cut off and extinguish his equity of redemption, and estop him, in the future, from asserting any claim to the land, he being a man of litigious disposition, and insolvent.
Upon these facts, did the complainant acquire a valid and indefeasible title to the land ? We think he did.
The fallacy of the elaborate argument on the other side lies in the assumption that, upon the conveyance from Kincaid to Bowman, the title rested in the latter; *97 and though hut for an instant, that was sufficient for the lien of the defendant’s decree to attach upon the land as the property of the debtor. This reasoning is unsound. The transaction was one continuous, entire act. By the agreement and understanding of all the parties, preceding the execution of the deeds, no interest was to he vested in Bowman; he was used merely as the medium for passing the title to the complainant; and the two deeds, being executed at the same time, and taking effect at the same instant, constitute hut one act, the legal effect of which was to pass the title immediately and without intermission from Kincaid, through Bowman, to the complainant. This is a familiar principle in cases of dower. In treating of the question, "What will he a sufficient seisin of the husband to render the wife dowable ? Blackstone says, Book ii., 130-132, “The seisin of the husband for a transitory instant only, where the same act which gives him the estate conveys it also out of him again — as where, by a' fine, land is granted to a man, and he immediately renders it back by the same fine — such a seisin will not entitle the wife to dower; for the land was merely in transitu, and never rested in the husband, the grant and render being one continued act. But if the land abides in him for the interval of but a single moment, it seems that the wife shall be endowed thereof.” See also 1 Johns. Oases, 95; 15 John. Rep., 458; 4 Mass. Rep., 569, and authorities referred to, where this subject is considered. It is clear, therefore, upon the principle above stated, that the lien of the defendant’s decree did not attach upon the land, Bowman having no seisin thereof; »
But upon another and less refined principle, no lien *98 can be beld to exist in favor of the defendant, upon the facts in this record. The lien of a judgment will not, in equity, attach upon the mere legal title to land existing in the defendant, when the equitable title is in another person. Here, Bowman had no beneficial interest in the land: the complainant advanced the entire redemption-money, with the view of acquiring the absolute title. With knowledge of these facts, the defendant cannot be allowed to claim that the lien of his decree attached upon the mere naked legal title in Bowman, the preceding principle out of view.
Nor do we think the argument well founded, that the transaction, in the method adopted by the parties, was a fraud, in law, upon the creditors of Bowman. It is certainly true, that if Huffaker had simply redeemed the land, as a creditor, in the ordinary form, it would still have retained its redeemable character, in his hands, in favor of other creditors of Bowman. But it was divested of that character by the extinguishment of the right of redemption. If Bowman had the legal right to assign the equity of redemption given by statute, it is difficult to perceive how the exercise of that right, for an adequate consideration, and in the absence of actual fraud, can be regarded as a just ground of complaint on behalf of other creditors of Bowman, who, by their own laches, have lost the right of redemption secured to them by the statute.
The right of the judgment debtor to assign his equity of redemption seems to be a settled question. See Hepburn vs. Kerr and Davidson, 9 Humph., 726-730, and cases there referred to. And if this right be once fairly extinguished in the judgment debtor, can it be held to *99 exist in favor of Ms creditors? To affirm that it might continue to exist in favor of creditors, though extinct as to the debtor — through whose right the equity of the creditors is to be wrought out — would seem to be absurd. But as the case does not, in the pleadings, assume this aspect, it were needless to pursue the discussion upon this point.
The decree will be affirmed.